May it please the Court, my name is Edith Pierce, and I represent the plaintiff appellant Mahoma Sosa. May I reserve five minutes for rebuttal? Yes. We're here before the Court on an appeal from the District Judge's decision to grant summary judgment in favor of the government in this matter. Ms. Sosa was a Federal Air Marshal trainee. She had already completed Phase 1, and the issue is with regard to her completion or their failure to pass her through Phase 2, which occurred at the New Jersey Atlantic Training Location. There are multiple areas of the training that Ms. Sosa engaged in, being physical fitness and physical training, marksmanship, as well as what they call tactics, and tactics is the area of the greatest concern here. The District Court found in its decision that Ms. Sosa was not qualified for the position because she did not pass half the portion of the training. However, I disagree with that holding and finding in that it's actually the passing of the tactics that's at issue here. You mean she didn't pass tactics because she was discriminated against? Exactly. And so therefore the failure of the pass sort of begs the question of whether or not there was discrimination. But the instructors that she's primarily complaining about were not involved in tactics or grading tactics, were they? Well, Levine, yes, he was the head – he was in charge of tactics, and he was one of the people – he was the person who graded her. He's the person that she raised the specific issue that he had said she didn't do something, she said that she did something, and she specifically said to him, that's going to make me fail. And, in fact, that did make her fail. There's a lot about Mr. Levine – she says Levine, Levine – in her complaint, a lot. Is there a deposition or something else in the record? There is a deposition. Oh, there is a deposition of Levine, that's right. Oh, of Mr. Levine as well. But it doesn't have any of the things that are in her complaint. It wasn't – I don't know whether it wasn't pursued or – Mr. Levine was difficult in deposition in that many of the questions that were asked, although they were asked of my client by government's counsel. When I asked, I was told that it was governmental secrets and privilege, and I couldn't go into what happened in the tactics, what was that tactic. And it was those kinds of things that I wasn't able to get. It goes back, I think, when we look at this, the issue was raised by multiple people, that tactics was used as a measure to fail. How can we determine whether there is a valid allegation until we find out what went on in tactics and why there's a problem? I mean, courts deal frequently with sealed records. And I understand that. And that was certainly one of the issues, I think, as an issue of fact, of actually what went on. I think that's certainly an issue of fact. Did you take any steps further to find out what had gone on in tactics and what the problems were? Well, we certainly had my client's testimony as to what went on. Well, but did you as an attorney? Other than depositions, we didn't get any further than that because of that issue, unfortunately. So then we are limited by what you have pursued. We are. We are certainly in this appeal. What about the Funk Affidavit? I don't think Judge Arenas mentioned it in his opinion. I assume you would say that helps you. Yes, absolutely. Is that admissible? Well, it certainly is admissible when Ms. Funk would be called as a witness to testify, and she would be testifying at trial. I mean, is it lay opinion, or is it hearsay, or what is it? It's a witness. She's a witness who actually observed and heard things that were discriminatory. So whether you call her an expert because she is a trainer herself, or whether you call her a lay witness because she's just an individual who experienced discrimination herself, that affidavit in itself, I do believe, and that was the next level of my argument, needed to be considered as well as the complaints of the other individuals. They should be considered because those individuals were listed as witnesses. They would be called as witnesses at trial, and although obviously a statement or a report of discrimination in and of itself, I'm not going to suggest I can hand it in as evidence by itself. Well, what part of the Funk Affidavit do you say, either directly or circumstantially, stands for the proposition that when Levin failed the plaintiff in tactics, that was a gender-based action on his part? What part of the affidavit says that? Because there was a gender discrimination. There was a general discrimination against women in tactics and in the training program that was stated in Ms. Funk's State Center that women don't belong here. That was repeatedly stated to her. Tactics, it was well known, was the one area of subjective testing, and anecdotally that has been changed. You say that in paragraph 14, that it's subjective. Yes, and in fact the government has since changed that to be a more objective test. I don't imagine that issue would ever arise again with regard to tactics training. But it was very subjective. The question was whether or not somebody did what you say they did versus what they say they did. There was no way to empirically test what somebody was writing down at the time. As I understand it, with respect to the Levin connection, that's made on the basis of information in the Rule 56 submissions, as you say, that Levin had flunked another woman. Yes, and he participated in that. Now, how about Joyner and Williams' failures? I mean, there were two other tactics courses that were given, tests that were given, one by Joyner and one by Williams, and I didn't see anything in the record that connects those failures with any of the so-called bad guys, Royer, Topov, and even Levin. Well, I suggest that they were clever about the way they handled this, but in fact Mr. Levin was in charge of everybody. You say they were clever about the way they handled this? Well, they didn't come out and say, I'm not going to pass you because you're a woman. I mean, they didn't come out and say that directly, but they clearly in their actions and the manner in which they treated the women differently than the men, that they didn't expect what Ms. So said and other witnesses said, that although they weren't passed, they weren't given any counseling on what they should have done or could have done to try to rectify the situation. In Ms. So's instance particularly, she was forced to retreat, to repeat, I'm sorry, physical training, which nobody else was, and that was not considered a measure. So it was not as though, I'm not suggesting that there was a bold statement other than in front of Ms. Funk that women don't belong here and we're not going to pass you because you're a woman. But that's the idea, I think, of the circumstantial evidence, is that it's more broad than just... Are you attacking the scores specifically? Are you pointing to specific tests where we look and say, oh, you know what? There's not that much that's wrong here. Why did she get a minus 5 or a 25? I mean, are there specific things that you would point to where you say the subjectivity clearly is apparent from... Well, yes. ...the face of the document? Yes, at least in the final testing. When we look in the fact that she had to do remedial, I mean, ultimately if they hadn't failed her in the end, whether or not she did remedial wouldn't have been an issue. So if we go to the final testing, I mean, she received 75, a score of 75, and there was nothing ever explaining why or how the reason for this failure. And even in the letter that was issued to the government directly, it was simply by Mr. Levin stating why she failed. It was simply a recitation of the category and not what she did wrong. So there is nothing to show objectively how she failed this subjective test. There's something in the record about the fact that when the males made a mistake, they were stopped and told to start over. And when she went, they just let her go, and it got from bad to worse, as I guess you can imagine these technical things would. Is there anything in the record to support that? I mean, other than their individual statements of what occurred? I mean, it's just the individual statements. I mean, I guess I'm looking for sworn affidavits to that effect. Well, you relied on the statements as the circumstantial evidence, and the individuals would be listed as well, though you need a file. Yeah, but apart from Funk, there was a man who observed her, but his statement is not sworn, is it? No. And we need, I mean, for Rule 56, you need depositions under oath so that the Funk affidavit may be all that we can really consider. But I do think when we're looking at circumstantial evidence, evidence that would expand upon simply what is relating to my client and her testimony and the testimony, is the complaints of the other women lend credence as circumstantial evidence, and certainly at trial they would testify as witnesses. Well, would they or would they not? I mean, would what they have to say be admissible if it is incidental incidents that don't involve the plaintiff at all, unless you're talking about a hostile environment and you have sufficient here to establish that? Well, I do think that we do. I think there's certainly, especially given what Ms. Funk, and Ms. Funk being a trainer herself was privy to more information and privy to a broader experience, and she certainly believes and stated that there was a culture of discrimination. Okay, we'll hear from you on rebuttal. You have five minutes, sir. May I please report? Daniel Gibbons, Assistant United States Attorney for the Secretary of Homeland Security. Your Honor, the first problem with Appellant's case is they put in no admissible evidence in the face of a well-supported Rule 56 motion for summary judgment. What about the Funk Affidavit, which is based upon observations, I mean, firsthand observations by another person? In a case like this, don't we have to consider that? We have very few firsthand observations of the Funk Affidavit. Well, the district court didn't consider it, so we don't know how it should be evaluated. Well, that's not true. That's not true. He didn't mention it. Judge Arenas did mention it. He did? And he mentioned that the affidavit and the other complaints were put in, and he found that... He didn't mention it by name, or did he? Maybe point me to where you're... Unrelated complaints by three other females. That's it. Attempts to show. Well, she's not, I mean, Funk is not making a complaint. She is offering evidence as pertains to Sosa. She's not talking about herself. She is an air marshal. Well, mostly she's saying, I believe that these people discriminated against her. I believe that I understand what their motives were. She doesn't speak in terms of fact. And this court has... She says, I observed. She gave 110% effort on everything I observed. I believe that because Ms. Sosa was a Hispanic woman, I mean, she's attributing her belief to the causation, Royer and Podoba, both Caucasian male instructors, harassed her constantly during the five weeks she was in attendance. And now I take from that that she doesn't believe that they harassed her. She observed that they harassed her. Her belief was because she was Hispanic, she was a Hispanic woman. I mean, this is an observation. Well, I suppose you could interpret it that way. I think it's equally interpreted to say, I believe that they harassed her. Well, isn't that making a determination of fact then that's inappropriate by the district court at this stage? No, because this court has said in Hlinka that affidavits that say, I believe X, Y, Z are not personal knowledge and therefore not sufficient to raise a genuine issue of material fact of summary judgment. Well, how about that she gave 110% effort on everything I observed? So many of the analysis by her instructors were that she was slacking and she needs to reevaluate her current lifestyle and make an effort at attempting to do physical training. I mean, it totally contradicts what they're basically saying she's a slacker. Well, it doesn't contradict because Ms. Funk was a firearms instructor. She was not a tactics instructor. She doesn't say she was in a position to observe what Ms. Sosa did in her tactics. Well, she does say, Ms. Funk does say that Royer and Potapov both told Funk that women don't belong here. That's right. That's in the affidavit. That's what she did say. How else is there going to be evidence produced if there is a pervasive atmosphere of anti-gender and anti-national origin discrimination and everybody's in on it, if you will? How else are you going to have something to create a doubt other than someone who is not in that group who has made observations? Doesn't this at least raise an issue? Affidavits and depositions. Well, there is an affidavit here. And it's my position that the affidavit is insufficient because it's based on personal belief rather than personal knowledge. What's lay opinion? Based upon observation. Lay opinion is not admissible unless it's based on fact. Observation. Observation of fact. We don't, on the question of tactics, and apparently the government took the position that we can't talk about that. Well, obviously, you've got to talk about it if we're going to adequately review this case. And if the tactics are confidential, then the record can be sealed. But don't we need to go further into exactly why she failed tactics and so we can understand her position that this was subjective to keep her out rather than an objective evaluation of what she was doing? And the government put in evidence of exactly that. There's the Joyner and the Williams declarations that go over her grading sheet and explain exactly what she did that got her downgraded. And Mr. Levin, in his deposition, starting at about page 260 of the appendix, goes through each of his grading sheets and explains what she did wrong and why it's a bad thing. Can I ask you about two specific pages in the appendix? One is 317 where it's a two-page test and the hits where I guess the correct answers are 47. The misses are five. Then there is a statement that says total penalties, 11. I can't figure out for the life of me where the penalties come from. And you get down to a score of 36 and a failure when it looks to me like you got 47 right and five wrong. That is a tactical pistol proficiency evaluation and it was not one of the reasons she was dismissed. Well, but could you explain to me what a penalty is? I can't, Your Honor. That document was not explored during Mr. Levin's deposition. It was merely identified to explain what it was. It's a record of a pistol proficiency evaluation and there was no argument made that Ms. Sosa was deficient in her pistol proficiency. What do we have in the record that does relate to the tactics tests, the three of them, Levin, Joyner, and Williams? Are those tests in the record? They are, Your Honor. They are exhibits Sosa 1, 2, and 3. Yes, I will, Your Honor. Starting at page 158. And 167 is one of those? 168 through 167 of the appendix are the five test evaluations. The first two are discussed in the Joyner and Williams affidavits. When filed, they were attached to the affidavits. In the appendix, they're not, but they're identified by exhibit number. That starts at 34. And the last three are discussed in Mr. Levin's deposition. What about the possibility or what's been stated that when the guys got it wrong, they were stopped and told to start over as compared to her situation went from bad to worse, apparently? Well, those are some complaints filed by two other women who failed tactics exams. Right. They are not sworn affidavits. They are insufficient to raise a genuine issue of material fact under Rule 56. So they need not even be addressed. However, if you look at the Levin deposition and the Sosa deposition and the three complaints, or the three complaints, Sosa, Dragone, and Diaz. Angelucci. Angelucci. Each class had about 30 students. A new class started every week. That's in excess of 1,500 students a year. In the year that Mr. Levin held the position of the tactics boss, if you will, he said that he had done re-evaluations, that is people who had failed their first two tests, less than 15 times. And several of them were women. What the record shows is out of more than 1,500 students, only three women ever complained because they flunked tactics. And I would submit that that's just simply not statistically significant to show a pattern and practice of discrimination. They can say the only reason I flunked was because they don't like me. But that just doesn't make it so. How many women were there? That is not in the record. I mean, if there were four women and three flunked, that would be significant. If there were 750 women and three flunked, that might not. That is not in the record. But if you look carefully at the testimony and the complaints, there were at least several women in each class. And then you don't really know why. Maybe they were so disgusted. You don't know why. Maybe they didn't bother. They didn't think it was worthwhile. You just don't know. I just don't think that's all that probative. I mean, I'm looking at these sheets. And, for instance, at 161, the passing score is 85. And there are a couple of comments along here. But she's given a 25. How does that – how do you calculate that? As compared to – looks to me like maybe it would be an 80. I mean, sure, she did some things wrong, but there aren't that many marks against it. That is discussed in the Williams affidavit or declaration starting at page 38. But you would acknowledge that that's a subjective analysis, would you not? There is certainly a subjective element to this test. Because what this evaluation is evaluating is the trainee's judgment in executing nonlethal or lethal force in a situation that may or may not be a hijacking incident. So it's testing judgment. And as this case – this court said under Fuentes, just because the employer makes a bad decision doesn't make it discrimination. Maybe there's a better way to test judgment. I don't know. But in this case, yes, it's a subjective test of an exercise of judgment in lethal and nonlethal force. But we have three different – I think I'm right about this. And correct me if I'm wrong. We have three different instructors administering the same test, the airplane tactics evaluation, within a five-week period. Three. Within a two-week period. Within a two-week period. Correct. Okay. It's the end of the first training session, Thursday and Friday. Then she is recycled for a week and another Thursday. If they were trying to move her out – I'm talking now circumstantial evidence. If they were trying to move her out, why would they have given her the second and third opportunity to pass the test? Exactly. They wouldn't. I think that shows that they were trying to pass as many federal air marshals as they could through the program. If the court remembers, after 9-11, there was a huge ramp-up in the federal air marshal program. And they went out looking for people in other federal agencies with some law enforcement experience and put them through a training program so that they could get air marshals on every airplane. There was no reason to throw out a person unless they lacked the judgment to adequately do the job. I'm almost out of time. I don't have anything else to address unless the court has additional questions. Thank you, Your Honor. Thank you. If they were trying to move her out, why did they give her the test the second and the third time? Because the manual, the training manual provides for it. Thank you. Is that manual in the record? I believe it is. I was just trying to find the page while we were speaking. You can just leave it. I don't want to invade your time. Okay. You can go on and just leave the reference with the clerk. I will. Also, I know at A225 in Levin's deposition, when we talked to him, when I specifically questioned him about the things that he said that Ms. Sosa did to fail, I said, how close were you to her? Could you see her? And he said, I don't have any recollection. So, I mean, he couldn't give me any definite as to why he specifically failed her. He wrote down certain things. But there were, when I went through his and questioned him on the ultimate failure, which is really the one that's at issue because, again, the remediation was allowed. Multiple people remediated. I'm not going to suggest it was only women who remediated. It was substantially women who remediated. When you look at the percentage, because I believe it's also contained in the record, and I know your Honor's question for how many women, I believe it was approximately two per class. And I can find that reference as well for you. But substantially women were caused to remediate, and substantially women were caused to fail. But when I questioned Levin, he could not point to specifics. I mean, he wrote down something, but he couldn't say, well, I saw it here, I was standing there, I could see this or that. It's just it doesn't lend any credence to an actual objective determination. And I really think that there is sufficient evidence to show that, in fact, there was a pretext in the grading system of the tactics. Do we have anything in the record that would demonstrate that her performance on the tactics piece was as good as someone else? Do we have anything that would support that notion? That's the exact problem, is that everything was subjective. There was nothing to compare. There was no video that you could compare this to that. But I mean another person in the class who has taken an affidavit saying she did just as well as everybody. I mean, there is the statement that they stopped other people, but not her. Well, Ms. Sosta testified that nobody would really talk to her because they knew she was being picked on. Everybody stayed away from her. Nobody wanted anything to do with her. No one's going to support her because it's a no-no. And so it becomes a catch-22. You're being discriminated against. Nobody wants to stand up for it because they don't want to be associated with that. It's so pervasive. Well, Levin did testify, as I recall, from the appendix at page 180. Levin did testify that there was one federal air marshal who was not terminated after she had failed the tactics evaluation. And there may have been one that actually passed, yes. But, again, I think to show the discrimination, not everybody must fail. It must be showing a pattern here of intentionally discriminating against women. If one is lucky enough to break through, I don't believe that that means that there wasn't or isn't at that point in time wasn't ongoing discrimination. I think that pretty much sums up, and I'd like to find that citation. You're all right. You can leave it with the clerk. Thank you. All right, anything further? All right, thank you. Thank you, counsel.